IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA MILLER, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>SOUTHWEST AIRLINES, CO., a Texas corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants.<br>                                        / | No. C 12-03482 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

In this employment-discrimination action, defendants move under Rule 12(b)(1) to dismiss plaintiff's claims for lack of subject-matter jurisdiction and under Rule 12(c) for judgment on the pleadings. For the reasons stated below, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiff Claudia Miller is an African-American female who was employed by defendant Southwest Airlines, Co. as an operations agent at the San Francisco International Airport. During the first six months of her employment, plaintiff was a probationary employee who was not entitled to all of the benefits offered to permanent Southwest employees (Compl. ¶¶ 9–10). While as a probationary employee plaintiff was not entitled to union membership, the parties agree that plaintiff was subject to the collective bargaining agreement (CBA) between defendant and the Transport Workers Union of America.

During plaintiff's employment with defendant, she was often required to work excessive mandatory overtime hours. Plaintiff alleges that non-African American employees were not asked to nor required to work excessive mandatory overtime hours. Plaintiff was often assigned to work alone at stations that required a constant employee presence or to relocate from gate to gate, which prevented her from taking her meal-and-rest breaks (*id.* at ¶¶ 12–15).

Plaintiff's overwhelming work schedule, which included double-shifts and her inability to take her meal-and-rest breaks, began to take a physical and emotional toll. In July 2011, after nearly four months of employment, plaintiff wrote an email to her supervisor Assistant Station Manager Lei'Lani Dresser describing her concerns about understaffing certain shifts and forcing plaintiff to miss meal-and-rest breaks as well as bathroom breaks. Plaintiff also explained that operations agents, like herself, who work long shifts without breaks were more likely to make errors and pose safety concerns (*id.* at ¶¶ 16–17).

The day after the email was sent, Manager Dresser allegedly began issuing plaintiff disciplinary write-ups for minor errors. Other non-African American employees allegedly made the same minor errors and were not written up. Plaintiff alleges that defendant wanted her out of the company because she had complained about workplace practices (*id.* at ¶¶ 19–21).

Less than two months after plaintiff sent Manager Dresser the email, defendant terminated plaintiff. Plaintiff had two weeks left before her probationary period ended. Plaintiff was told that her performance problems were the reason for termination (*id.* at ¶ 22). Plaintiff, however, alleges that she had received multiple employee commendations for her excellent work performance, one of which was given to plaintiff less than one month before being terminated (*id.* at ¶ 11).

Plaintiff allegedly observed defendant terminate several African-American and Latino employees within close proximity to the end of their probationary periods. Plaintiff allegedly did not observe or learn of a single termination of a non-African American or non-Latino probationary employee (*id.* at ¶ 23).

Plaintiff timely filed charges with the California Department of Fair Housing and Employment (DFEH) and the U.S. Equal Employment Opportunity Commission (EEOC).

Plaintiff received a notice of case closure and right-to-sue notice from the DFEH, and a right-to-sue notice from the EEOC (*id.* at ¶¶ 24–26).

On July 2012, plaintiff filed the complaint herein. Plaintiff alleges race discrimination under Title VII and California's FEHA, failure to provide meal-and-rest breaks, retaliation under California Labor Code Section 226.7, and wrongful termination in violation of public policy.

Defendant has now filed a motion to dismiss for lack of subject-matter jurisdiction arguing that all of plaintiff's claims are preempted by the Railway Labor Act. Defendant has also filed a motion for judgment on the pleadings, arguing that plaintiff's claims for meal-and-rest breaks, retaliation, and wrongful termination are preempted by the Airline Deregulation Act.

On February 7, 2013, the parties attended the hearing on the instant motions. At the hearing, plaintiff's counsel raised for the first time a decision by our court of appeals that was not included in plaintiff's opposition. Defendant was allowed to file a supplemental brief in response, which the Court has reviewed.

**ANALYSIS**

As an initial matter, plaintiff contends that defendant's Rule 12(b)(1) motion is not timely because defendant filed an answer prior to filing the motion. As stated by our court of appeals, however, "the deadline for making a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is prolonged by Rule 12(h)(3), which provides that [i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (quoting *Arbaugh v. Y. & H. Corp.*, 546 U.S. 500, 506 (2006)) (internal quotations omitted). A motion for subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Ibid.* The Rule 12(b)(1) motion is, therefore, timely.

Our court of appeals has held that a Rule 12(c) motion "is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012) (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The analysis under a Rule 12(c) motion is substantially identical to a

3

Rule 12(b)(6) motion because "under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Ibid.*

### 1. RETALIATION CLAIM UNDER LABOR CODE.

To pursue a retaliation claim under California Labor Code Section 1102.5, plaintiff must first exhaust her administrative remedies. "Where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Campbell v. Regents of Univ. of Cal.*, 35 Cal. 4th 311, 321 (2005) (internal quotations omitted).

Under *Campbell*, the administrative remedy for a violation of Section 1102.5(c) is provided by California Labor Code Section 98.7, which provides that an aggrieved person must first file a complaint with the California Labor Commissioner prior to bringing suit in court. *Ferretti v. Pfizer, Inc.*, 855 F. Supp. 2d 1017, 1023 (N.D. Cal. Feb. 29, 2012) (Judge Lucy Koh). The complaint to the Labor Commissioner must be filed within six months after the violation occurred. Cal. Lab. Code § 98.7(a). The undersigned has held that administrative exhaustion is required before a plaintiff may bring a retaliation claim under Section 1102.5. *Wright v. Kaiser Found. Hosps.*, 2012 U.S. Dist. LEXIS 132459, at *6 (N.D. Cal. Sept. 17, 2012). Plaintiff's complaint states that she filed charges with the DFEH and the EEOC, but not with the Labor Commissioner (Compl. ¶ 24). Plaintiff's opposition does not address at all the failure to exhaust. Defendant's motion for judgment on the pleading is **GRANTED**.

### 2. RAILWAY LABOR ACT PREEMPTION.

Congress enacted the Railway Labor Act (RLA) to handle labor disputes. In 1936, the RLA was extended to cover the airline industry. The Supreme Court stated:

> Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes . . . To realize this goal, the RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes . . . Major disputes relate to the formation of collective bargaining agreements or efforts to secure them . . . Minor disputes grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

4

1  *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994) (internal quotations and citations
2  omitted). The Supreme Court has held that minor disputes, *e.g.* those "involving the
3  interpretation or application of existing labor agreements," are preempted by the RLA. *Id.* at
4  256. Claims involving the enforcement of rights independent of a CBA, however, are not
5  preempted. *Ibid*.

### A.   Title VII Race Discrimination Claim.

Plaintiff asserts a race discrimination claim under Title VII of the Civil Rights Act of 1964. Under Title VII, it is unlawful for an employer to discharge or "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of an individual's race. 42 U.S.C. 2000 *et seq.* Our court of appeals has held that Title VII rights exist independent of the CBA. *Felt v. Atchison, T. & S. F. Ry.*, 60 F.3d 1416, 1419 (9th Cir. 1995). In *Felt*, our court of appeals stated that whether the plaintiff has a meritorious Title VII claim cannot be conclusively resolved merely by consulting the CBA, so the RLA does not preclude litigation of Title VII rights. *Id.* at 1420. Plaintiff's Title VII claim is, therefore, not preempted by the RLA.

Defendant argues that the RLA preempts plaintiff's Title VII claim because such claims cannot be resolved without interpreting and applying the CBA. It argues that plaintiff's allegations of shift and staffing assignments, assigned overtime, and termination during her probationary period are terms of the CBA that must be interpreted (Br. 8). Our court of appeals, however, has affirmed that Title VII rights are independent rights outside of the CBA and thus are not preempted by the RLA. *See Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999). Defendant's motion to dismiss the Title VII claim for lack of subject-matter jurisdiction is, therefore, **DENIED**.

### B.   FEHA Race-Discrimination Claim.

Plaintiff also asserts a race-discrimination claim under FEHA. As with Title VII, the FEHA makes it unlawful for an employer to discharge a person or to "discriminate against the person in compensation or in terms, conditions, or privileges of employment" because of a person's race. Cal. Govt. Code § 12940(a). As with the Title VII claim, defendant argues that

5

plaintiff's race-discrimination claim is preempted by the RLA because it cannot be resolved without interpreting the CBA. Our court of appeals, however, has repeatedly affirmed that FEHA claims are also independent of the CBA and not preempted by the RLA. *See Saridakis*, 166 F.3d at 1277. In *Espinal v. Northwest Airlines*, 90 F.3d 1452, 1457 (9th Cir. 1996), our court of appeals applied a three-part analysis to determine if a disability discrimination claim brought under the FEHA was preempted by the RLA. It concluded that the FEHA claim was not preempted because: (i) the CBA did not govern the actions that gave rise to the discrimination claims, (ii) the FEHA statute has clear statutory and regulatory standards to evaluate the claim without considering provisions of the CBA, and (iii) the FEHA statute's intent is that employment without discrimination is a public policy of California that cannot be altered by private contract. *Id.* at 1457–58. Plaintiff has asserted a FEHA claim that is not preempted by the RLA. Defendant's motion to dismiss the FEHA claim for lack of subject-matter jurisdiction is, therefore, **DENIED**.

### C. Wrongful Termination in Violation of Public Policy.

The Supreme Court in *Hawaiian Airlines* held that a wrongful discharge in violation of public policy claim was not preempted by the RLA because it is state tort law that is apart from any CBA provision. *Hawaiian Airlines*, 512 U.S. at 258. Moreover, our court of appeals has reached the same conclusion "because such claims are derived from sources outside the CBA." *Saridakis*, 166 F.3d at 1278. Here, defendant argues that this claim should be dismissed because it is derivative of the race-discrimination claims that are preempted. This argument fails because the race-discrimination claims are not preempted. Defendant's motion to dismiss the wrongful termination in violation of public policy claim, therefore, is **DENIED**.

### 3. AIRLINE DEREGULATION ACT PREEMPTION.

In 1978, Congress enacted the Airline Deregulation Act in "determining that maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety [and] quality . . . of air transportation services []." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (internal quotations and citations omitted). The Deregulation Act includes an express federal preemption provision which provides that

6

"a State . . . may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. 41713(b)(1). The Supreme Court articulated the standard that "state enforcement actions having a connection with, or reference to, airline rates, routes, or services are pre-empted []." *Id.* at 384 (internal quotations and citations omitted). In a subsequent case, the Supreme Court specified that the Deregulation Act preempts state-imposed regulation of air carriers, but does not preempt contract terms set by the parties themselves. *Am. Airlines v. Wolens*, 513 U.S. 219, 221 (1995).

### A. Meal-and-Rest Break Claim.

At issue now is whether the Deregulation Act's preemption provision is broad enough to apply to plaintiff's meal-and-rest break claim. There is no decision by our court of appeals that specifically addresses whether a state meal-and-rest break statute is preempted by the Deregulation Act. Recently, however, our court of appeals highlighted the distinction the Supreme Court made in *Wolens* "between state laws that regulate airlines [which are preempted] and state enforcement of contract disputes [which are not preempted]" to conclude that state claims of implied covenant of good faith and fair dealing were not preempted. *Ginsberg v. Northwest, Inc.*, 695 F.3d 873, 880–81 (9th Cir. 2012) (quoting *Wolens*, 513 U.S. at 228–30).

The undersigned has previously considered whether the Deregulation Act preempts claims brought under California's meal-and-rest break statute. In *Alim v. Aircraft Serv. Int'l.*, 2012 U.S. Dist. LEXIS 119964, at *2 (N.D. Cal. Aug. 23, 2012), the plaintiffs were employees who maintained and repaired ground equipment for airlines. The undersigned noted that a meal-and-rest break claim alleged by workers who do not directly work for an airline, but for a provider of contract services to airlines, may be too tenuous, remote or peripheral to affect airline services. *Id.* at *7–8.

The Supreme Court has stated that the Deregulation Act and the Federal Aviation Administration Authorization Act (FAAAA) are subject to a similar analysis because both contain identical preemption provisions. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). In the decisions analyzing FAAAA preemption, courts have held that federal law

7

preempts meal-and-rest break claims. *See Campbell v. Vitran Express, Inc.*, 2012 U.S. Dist. LEXIS 85509, at *9 (C.D. Cal. June 8, 2012) (Judge R. Gary Klausner); *Cole v. CRST, Inc.*, 2012 U.S. Dist. LEXIS 144944, at *11 (C.D. Cal. Sept. 27, 2012) (Judge Virginia A. Phillips); *Dilts v. Penske Logistics LLC*, 819 F. Supp. 2d 1109, 1122 (S.D. Cal. Oct. 19, 2011) (Judge Janis L. Sammartino).

Defendant's argument that applying the state's meal-and-rest break regulations would affect airline rates, routes, or services has merit. Most of the job duties for operations agents revolve around two main areas. *First*, operations agents handle many aspects of customer service such as coordinating customer boarding/deplaning; coordinating servicing lavatories, cabin grooming, and wheelchairs for customers; ascertaining that aircrafts are properly cleaned and provisioned to prior to departure; and working with gate agents to collect boarding passes and verify boarding counts (Br. 17–18, CBA Art. 5.2). *Second*, operations agents handle many aspects of ensuring flight timeliness and safety such as transmitting required messages about conditions; operating stations/flight communications equipment and radio communications equipment; collecting weather reports for the crew; arranging to have aircraft fueled; preparing weight and balance computations at each station and advising dispatch, flight information, and stations of flight departures; and keeping other station personnel advised on flight movements, weather conditions, and irregular operations. *Ibid.* If meal-and-rest breaks were strictly applied, airline routes, services and costs would be affected and "the [Deregulation Act's] purpose to leave largely to the airlines themselves" would be diminished. *Wolens*, 513 U.S. at 228.

Plaintiff's arguments fail. Plaintiff's counsel, without citing the decision from which he copied verbatim, argues that the decisions cited by defendant do not recognize the flexibility of the meal-and-rest law and the employer can comply with the law by paying the employee an additional hour of wages. The decisions cited by plaintiff are either misquoted or inapposite. The holding of the majority of decisions quoted by plaintiff support Deregulation Act preemption of state statutes or city ordinances.

The only persuasive decision cited by plaintiff is one in which our court of appeals held that the Deregulation Act did not preempt California's prevailing wage law. *Californians for*

8

*Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998). However, as subsequent district court decisions have pointed out, California's prevailing wage law is different from the meal-and-rest law at issue because wage laws require the payment of a higher wage while meal-and-rest laws require off-duty breaks. *See Cole v. CRST, Inc.*, 2012 U.S. Dist. LEXIS 144944, at *16–17 (C.D. Cal. Sept. 27, 2012) (Judge Virginia A. Phillips); *Esquivel v. Vistar Corp.*, 2012 U.S. Dist. LEXIS 26686, at *15–16 (C.D. Cal. Feb. 8, 2012) (Judge Jacqueline H. Nguyen); *Dilts v. Penske Logistics LLC*, 819 F. Supp. 2d 1109, 1121 (S.D. Cal. Oct. 19, 2011) (Judge Janis L. Sammartino).

At the hearing, plaintiff's counsel raised for the first time a decision from our court of appeals, *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010), to argue that the Deregulation Act does not preempt certain state laws. In *Ventress*, our court of appeals held that the Deregulation Act does not preempt California Labor Code Section 1102.5(b), the state whistleblower-protection statute. Here, however, the statute at issue concerns meal-and-rest breaks under California Labor Code Section 226.7, not whistleblower protection. As illustrated by the *Ventress* decision, whistleblower claims do not inherently conflict with an airline's scheduling and service. But, strict compliance with meal-and-rest breaks do impact an airline's scheduling and service because it dictates when, during the course of a shift, the employee can go off-duty.

To the foregoing extent only, defendant's motion for judgment on the pleadings is, therefore, **GRANTED**.

## CONCLUSION

Defendant's motion to dismiss for lack of subject-matter jurisdiction is **DENIED** with respect to preemption of the Title VII, FEHA, and wrongful termination in violation of public policy claims. Defendant's motion for judgment on the pleadings is **GRANTED** with respect to the retaliation and meal-and-rest break claims. Leave to amend is not allowed.

**IT IS SO ORDERED.**

Dated: February 12, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9